CLARK HILL LLP
Sara B. Allman (SBN 107932)
SAllman@ClarkHill.com
Matthew T. Brand (SBN 295377)
MBrand@ClarkHill.com
One Embarcadero Center, Suite 400
San Francisco, CA 94111
Telephone: (415) 984-8500
Facsimile: (415) 984-8599

Attorneys for Defendant
CITY OF ALBANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANDREW GALPERN, AN INDIVIDUAL,

Plaintiff,

v.

CITY OF ALBANY, AND DOES 1-3, INCLUSIVE,

Defendants.

Case No. 3:19-cv-03408-RS

**STIPULATION AND [PROPOSED] ORDER FOR DISMISSAL**

IT IS HEREBY STIPULATED by and between Plaintiff ANDREW GALPERN and Defendant CITY OF ALBANY that, pursuant to Federal Rules of Civil Procedure Rule 41 (a) (2), and subject to the court's reservation of jurisdiction to enforce the parties' Settlement Agreement, the above-captioned action is dismissed with prejudice, each party to bear its own attorneys' fees and costs. The parties stipulate and request that the court retain jurisdiction over this action for such further orders, hearings and proceedings as may be appropriate to enforce the settlement pursuant to the terms of the parties' Settlement Agreement. A true and correct copy of the executed Settlement Agreement is attached hereto as Exhibit "A."

IT IS SO STIPULATED.

Dated: January 17, 2020

CLARK HILL LLP

By: _/s/ Sara B. Allman_

Sara B. Allman

Attorneys for Defendant
CITY OF ALBANY

Dated: January 17, 2020

DERBY MCGUINNESS & GOLDSMITH LLP

By: _/s/ Anthony E. Goldsmith_

Anthony E. Goldsmith

Attorneys for Plaintiff
ANDREW GALPERN

**ATTESTATION**

Concurrence in the filing of this document has been obtained from each of the individual(s) whose electronic signature is attributed above.

_/s/ Sara B. Allman_
Sara B. Allman

**ORDER**

Pursuant to the stipulation of the parties above, the Court hereby dismisses this case with prejudice. The court shall retain jurisdiction to enforce the Settlement Agreement between the parties attached to the stipulation as Exhibit "A."

IT IS SO ORDERED:

DATED: ______________________ ______________________________

Honorable Richard Seeborg
United States District Court Judge

# EXHIBIT A

# COURT ENFORCEABLE SETTLEMENT AGREEMENT AND RELEASE

This Court Enforceable Settlement Agreement and Release (the "Agreement") is entered into by and between Andrew Galpern ("Plaintiff") and the City of Albany ("Defendant"), to resolve any and all disputes between them, without any admission of wrongdoing of any kind. Together, Plaintiff and Defendant are referred to herein as the "Parties" and/or individually referred to herein as a "Party" to this Agreement.

## Recitals

A. Whereas, on August 15, 2018, Plaintiff presented an Administrative Claim to the Defendant pursuant to California Government Code § 910 (the "Claim").

B. Whereas, on June 14, 2019, Plaintiff filed a Complaint in the United States District Court for the Northern District of California entitled *Galpern v. City of Albany*, Case No.: 3:19-cv-03408-RS (the "Lawsuit");

C. Whereas, Plaintiff claims that Defendant has violated Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12131 et seq.) "ADA," Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794 et seq.), and related state statutes, and Defendant denies the allegations and specifically denies that it unlawfully discriminated against or otherwise wronged Plaintiff in any way; and

D. Whereas, the Parties wish to resolve any and all disputed issues between them, arising out of or related to the Claim and the Lawsuit, solely in a good faith attempt to settle a disputed claim and to avoid the expenses of protracted litigation, without the admission of any liability.

## Agreement

Therefore, for good and sufficient consideration, the Parties agree, as follows:

1. Incorporation of Recitals. The recitals are hereby incorporated into this Agreement as though fully set forth.

2. Effective Date. The "Effective Date" of this Agreement will be the date on which the last Party hereto has executed the Agreement, subject to the approvals required as set forth in Paragraph 29 herein below.

3. Non-Monetary Relief. Defendant agrees to complete the actions specified herein below (the "Work") and otherwise meet the obligations set forth in this Agreement pursuant to existing projects and those planned in the future to bring the public right of way pedestrian elements of the City of Albany into compliance with the ADA.

4. Funding. The Parties agree that the Defendant may in its sole and absolute discretion use any and all revenue sources available to it to fund the Work as described in Paragraph 14 of this Agreement. The Parties acknowledge that the Defendant currently does not have funding in place to carry out all the Work specified in the Agreement, but that it will use best efforts and do what is reasonably practicable to secure the funding so that the Work can be carried out in accordance with the agreed schedule described herein below.

5. Covered Elements and Geographic Scope. As used herein, the term "PROW Elements" shall refer to all public right of way pedestrian elements, including sidewalks, curb ramps, (and any other places where pedestrian paths cross roads or streets) and any related elements and features within the jurisdictional boundaries of the City of Albany (the "Geographic Scope").

6. Work Completion Date. Subject to shorter deadlines as set forth in Paragraph14, below, the outside limit for overall completion of the Work is twenty-five (25) years (the "Work Completion Date") from the Effective Date of this Agreement, unless otherwise modified by written agreement of the Parties.

7. Definition of Accessibility and Standards Applicable to the Work. Where a PROW Element is required to be "Accessible" within the Geographic Scope, the PROW Element must comply with the most stringent of federal or state access standards applicable to that PROW Element (the "Standards").

7.1 Without limiting the generality of Paragraph 7, it is expressly agreed that in order to be considered Accessible and in compliance with the Standards, all PROW Elements shall, except as otherwise provided herein, comply with the specifications, tolerances, and exceptions of: (i) the 2010 ADA Standards for Accessible Design as comprised by §35.151 of 28 C.F.R. Part 35 and the 2004 Americans with Disabilities Act Accessibility Guidelines (the "2004 ADAAG") as the 2004 ADAAG is set forth in 36 C.F.R. Part 1191, appendices B and D, as the same may be amended; (ii) the most current iteration of Title 24 Part 2 of the California Code of Regulations (the "CBC"): and, (iii) if required, the standards for public right of way features adopted by the California Department of Transportation and regulations of the United States Department of Transportation applicable to public rights of way. The Parties agree that, in order to be considered Accessible and in compliance with the Standards, sidewalks shall, at a minimum be required to comply with the regulations and standards applicable to accessible routes as set forth in Chapter 4 of the 2004 ADAAG and applicable provisions of the CBC and curb ramps (or other places where pedestrian paths cross streets or roads) shall, at a minimum, comply with the regulations and standards set forth in Chapter 4, section 406 of the 2004 ADAAG and 11B 406 of the CBC. Notwithstanding the foregoing, the Parties agree that the direct slope of sidewalks shall be considered Accessible and compliant with the Standards if they do not exceed the direct slope of the adjacent road or street.

7.2 The Work will be performed in compliance with the Standards including any specifications, tolerances, and exceptions set forth therein. In any instance(s) where the federal and State standards conflict, the Parties agree that the more stringent regulation (i.e. that providing greater

access) will apply. The Parties understand and agree that Defendant is not relieved by the terms of this Agreement from any obligation to provide access in the public right of way pedestrian elements to the extent otherwise required by law.

8. New Construction and Structural Impracticability. All new construction of PROW Elements in the Geographic Area that is undertaken by Defendant shall be Accessible and comply with the Standards. Notwithstanding the foregoing, if in the course of performing new construction, Defendant encounters conditions that render an item of the Work to be structurally impracticable, as that term is defined in the ADA (See 28 C.F.R. § 35.151(a)(2)(i)), then Defendant or its counsel will provide written notice to Plaintiff's counsel identifying the item of the Work that is structurally impracticable, pursuant to the notification and dispute resolution mechanism set forth in Paragraph 13, below.

9. Alterations and Technical Infeasibility. All alterations, modifications, repairs, additions and/or improvements ("alterations"), of any PROW Elements in the Geographic Area (including the Work as defined in Paragraph 14, below) that is undertaken by Defendant shall be Accessible and comply with the Standards. Notwithstanding the foregoing, if in the course of performing any future alterations Defendant encounters conditions that render an item of the Work to not be technically feasible as that term is defined in section 106.5 of the 2004 ADAAG , then Defendant or its counsel will provide written notice to Plaintiff's counsel identifying which alterations modification(s) to the item(s) it contends are not technically feasible and shall propose alternate modification(s) intended to provide equal or substantially the same access as the alteration(s) determined to be not technically feasible, Pursuant to the dispute resolution mechanism set forth in Paragraph 13 of this Agreement. The Parties agree that, except as agreed to in this Agreement, Defendant is not required by the terms of hereof to correct any existing non-compliant curb ramp features that were constructed or should have been improved after the effective date of Title II of the ADA and that the terms of this Agreement are intended to stand in the place of any such past obligations with respect to those PROW Elements.

10. Initial Survey. Defendant will commission a survey of the PROW Elements within the Geographic Scope for compliance with the Standards ("Survey") from Beneficial Designs or other qualified third party acceptable to Plaintiff and will provide a copy of same to Plaintiff's counsel by December 31, 2020.

11. Utility Vault Painting and Notice to Utility Companies upon Receipt of Survey. Without admitting liability for, defect in, ownership of, or control over the utility vaults installed by third party utility companies in the public rights of way, or the feasibility of taking precautionary measures relating to those utility vaults, Defendant will paint the perimeter of any utility vault identified in the Surveys required (as set forth in Paragraphs 10 and 12) as noncompliant with the Standards and/or not Accessible with high visibility paint, shall notify the respective utility companies of the non-compliance and demand repair and remediation of the subject vaults. Notice shall be sent within six (6) months of receipt of the Survey(s). A copy of each such demand shall also be supplied to Plaintiff's counsel.

12. Subsequent Inspections and Reports. Defendant will inspect PROW Elements within the Geographic Scope every five (5) years following the initial Survey and will post the results of the inspection on its public website or provide Plaintiff's counsel a written report regarding same by December 1st of each inspection year until the Work is complete. The surveys required by this Paragraph 12 and Paragraph 10, above shall, collectively, be referred to as the "Surveys").

13. Notifications and Meet and Confer Regarding Unforeseen Difficulties in Completing the Work.

(a) In the event that unforeseen difficulties prevent Defendant from meeting the deadlines, completing any of the agreed-upon Work in the manner required by this Agreement, or for any other reason being unable to meet the terms and conditions of this Agreement or in the event of a determination that meeting the Standards is not structurally practicable or technically feasible (pursuant to Paragraphs 8 and 9 above) Defendant or its counsel will notify Plaintiff's counsel in writing of the delay or cause for non-compliance or other determination within thirty (30) days of the discovery thereof. The Parties will thereafter meet and confer in good faith to attempt to resolve any unforeseen delays within sixty (60) days of Defendant's written notice to Plaintiff's counsel. Plaintiff will conduct this meet and confer with Defendant prior to seeking enforcement of this Agreement by the Court. The Parties agree that in the event of a dispute regarding compliance with the terms of this Agreement, that Plaintiff reserves the right to seek compensation for reasonable attorneys' fees, litigation expenses and costs and Defendant reserves the right to seek compensation for reasonable attorneys' fees, litigation expenses and costs in the event a dispute raised by Plaintiff is determined to be frivolous, unreasonable or groundless pursuant to the holding of *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978). If the Parties disagree on the entitlement to or the reasonableness or amount of attorneys' fees, litigation expenses, and costs, those matters shall be determined by the Court.

(b) Consequences of Force Majeure Event. The Defendant shall not be considered in breach of this Agreement to the extent its performance is prevented by an event of Force Majeure that arises after the Effective Date, including but not limited to an act of God (such as, but not limited to, fires, explosions, earthquakes, drought, tidal waves and floods), war, invasion, military or usurped power, threat of terrorism, and nuclear contamination.

14. The Work:

- Maintenance Sidewalk Shaving and Crack filling: The Defendant will complete maintenance shaving and crack-filling according to the following schedule:
    - *Sidewalk Shaving:* Sidewalk shaving addressing offsets of less than approximately two (2) inches along sections of Solano Avenue, San Pablo Avenue, Marin Avenue, Masonic Avenue, Santa Fe Avenue, Key Route

Boulevard, Stannage Avenue, Talbot Avenue, Pomona Avenue and Peralta Avenue will be completed by June 30, 2020. The Defendant will conduct annual maintenance sidewalk shaving starting in the 2021 fiscal year by dividing the Geographic Scope into five (5) roughly equal sections and shaving one section annually in an ongoing 5-year cycle through the Work Completion Date.

- *Crack Filling:* Crack filling will be completed on the Solano Avenue and San Pablo Avenue commercial sidewalks by the end of the calendar year 2020. Crack filling thereafter will be completed on an as-needed basis through the Work Completion Date.

- Sidewalk Repairs: Defendant will complete sidewalk alterations, or other kinds of repair or barrier remediation as part of the City's sidewalk repair program to assure that all sidewalks in the Geographic Scope are Accessible. Sections of sidewalk requiring alterations or other kinds of repair or remediation shall be identified using the survey and inspections conducted pursuant to Paragraphs 10 and 12 above. Alterations or other repairs or remediation will address identified non-Accessible conditions in sidewalks, including changes in level, offsets, running slopes, cross slopes, and widths, and will be prioritized for repairs or remediation according to the City's existing priority network. The priority network will also include sections of Stannage Avenue and Pomona Avenue between Solano Avenue and Marin Avenue.
- Sidewalk alterations, repairs or other kinds of remediation will be ongoing through the Work Completion Date; provided, however that: (i) all sidewalks along Solano and San Pablo Avenues shall be Accessible within ten (10) years from the Effective Date; (ii) sidewalks along Marin Avenue and on Stannage Avenue shall be Accessible within four (4) years of the Effective Date; and (iii) sidewalks along Pomona Avenue between Solano Avenue and Marin Avenue shall be Accessible within two (2) years of the Effective Date (the above referenced specific sidewalk areas along Solano, San Pablo, Marin, Stannage and Pomona Avenues shall be referred to herein as the "Priority Sidewalks"). The Defendant shall be deemed to be in substantial compliance with its obligations to create Accessible sidewalks under this Agreement if it meets the agreed upon deadlines with respect to creating Accessible Priority Sidewalks and, as to sidewalks in the Geographic Scope other than Priority Sidewalks, is remediating enough barriers so that all sidewalks in the Geographic Scope can be reasonably anticipated to demonstrate Accessible conditions on or prior to the Work Completion Date. Progress and determination of substantial compliance with the above requirements shall be made with reference to the number of barriers eliminated and the number of accessible sidewalk sections created following the date of delivery of each of the Surveys required by Paragraph 12.

- Traffic Signal Retrofit: Defendant will retrofit City-owned traffic signals (with the exception of the signals at Masonic and Solano and Masonic and Marin) such that push buttons are installed at the correct height by December 31, 2020.

- Solano Avenue Curb Ramps: Defendant shall provide Accessible curb ramps along all of Solano Avenue from Madison to Masonic within two (2) years of the Effective Date. Accessible Curb ramps will be added, replaced and/or modified on Solano Avenue from Masonic (Upper Solano) to the eastern City limit within ten (10) years of the Effective Date.

- San Pablo Avenue Curb Ramps: Defendant shall provide Accessible curb ramps along all of San Pablo Avenue from Portland to Brighton by the end of fiscal year 2022 (June 30, 2022) and on the rest of San Pablo Avenue within ten (10) years of the Effective Date.

- Marin Avenue Paving Project: Defendant shall provide Accessible curb Ramps on Marin Avenue from Masonic/Key Route to Tulare within four (4) years of the Effective Date as part of the City's annual paving program.

- Remaining Curb Ramps in Residential Areas: Additional Accessible curb ramps in residential areas shall be provided in the reminder of the Geographic Scope not otherwise addressed above shall be provided during and within the period of time leading to the Work Completion date as part of the City's annual paving program.

15. Settlement Sum. Defendant, in full and final settlement of Plaintiff's claims for monetary damages, claimed costs of $24,000, and claimed attorney's fees of $52,000 related to the Lawsuit, will pay the settlement sum of One Hundred Thousand Dollars ($100,000.00) (the "Settlement Sum"). Nothing herein shall limit the allocation of the Settlement Sum between Plaintiff and his counsel. Each party will otherwise bear its own further attorneys' fees and costs, if any, in relation to the Lawsuit and settlement of the Lawsuit.

Defendant will cause payment of the Settlement Sum to be made within thirty (30) days of the date that this Agreement is approved by the City Council and its risk management authority, Bay Cities Joint Powers Authority, subject to the approvals called for in Paragraph 28 herein below and timely receipt of this Agreement executed by Plaintiff, together with an executed IRS W-9 form from the payee, by check payable to the "Derby, McGuiness & Goldsmith LLP Client Trust Account" and delivered to Derby, McGuiness & Goldsmith LLP, 300 Lakeside Drive, Suite 1000, Oakland, CA 94612, on or before 30 days following the Effective Date of this Agreement.

Plaintiff understands and acknowledges that he will be responsible for all taxes that he is legally responsible to pay as a result of this Agreement. Plaintiff agrees that, should any taxing authority assess any taxes, penalties or interest against him as a result of the Settlement Sum, he is solely responsible for the taxes, penalties, or interest, if any, which may be owed to any governmental agency as a result of the Settlement Sum, and Plaintiff agrees that he will indemnify and hold harmless Defendant for any such taxes, penalties, or interest of any nature.

16. Dismissal with Prejudice. Within five (5) business days following the later of the actual receipt by Plaintiff's counsel of the Settlement Sum provided for in Paragraph 15 above and the Court entering an order to retain jurisdiction over the terms hereof, Plaintiff shall file a stipulated dismissal with prejudice with a waiver of fees and costs of the entire Action, subject to the reservation of jurisdiction called for in Paragraph 29, below. Defendant will cooperate in the timely filing of said dismissal.

17. Release. For and in consideration of the covenants contained herein and in consideration of the Settlement Sum described in Paragraph 15 of this Agreement paid by Defendant to Plaintiff, Plaintiff agrees that, except as set forth herein, he will make no claim in the future for equitable relief or remedial measures to be undertaken as a result of any alleged discrimination and/or other alleged wrongful conduct by Defendant that was or could have been made in the Lawsuit and hereby releases, acquits and forever discharges Defendant and its representatives, employees, managers, accountants, agents, servants, contractors, joint venturers, affiliates, officers, directors, City Council, Council members, attorneys and indemnitors, of and from any and all claims, potential claims, demands of whatever kind or nature, whether in law or equity, presently known or unknown, and or causes of action through the Effective Date of this Agreement. Notwithstanding the foregoing, neither the release set forth in this Paragraph 17, Paragraph 18, below nor any other provision of this Agreement serves to release Defendant with respect to : (1) any violations of any of the terms of this Agreement or (2) any claim, suit, cause of action or right of recovery with respect to any building, facility, property, program, activity or service of the Defendant other than the physical condition of its PROW Elements. Additionally, the Parties specifically agree that neither the Release set forth in this Paragraph, Paragraph 18 or any other provision of this Agreement shall in any way release Defendant or in any way limit any future claim, suit, cause of action or right of recovery that Plaintiff may have against Defendant or any other person or entity in the event that he suffers a physical personal injury because a PROW Element is not Accessible (including, without limitation any claims or causes of action Plaintiff may have under Title II of the ADA, §§ 51, 54 or 54.1 of the California Civil Code or any provision of the California Government Code) with the exception that in any lawsuit brought in connection with a personal injury Plaintiff shall not seek equitable relief unless for a breach of the terms of this Agreement. .

18. Waiver of Rights under Civil Code Section 1542. As to the matters released herein, Plaintiff expressly waives, to the full extent permitted by law, all rights pursuant to §1542 of the California Civil Code which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Plaintiff acknowledges that he is aware that he or his attorneys may discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of this Agreement, but that it is his intention to settle and release fully, finally and forever, any and all disputes and differences, known and unknown, suspected and unsuspected, which now exist, may exist, have existed, or hereafter may exist in the future relating to the subject matter of this Agreement.

19. No Admission of Liability. The Parties agree that neither this Agreement nor anything said in the negotiation hereof will constitute an admission of liability, an acknowledgement of wrongdoing of any kind, or an admission or concession by Defendant on any point of fact or law. Neither this Agreement nor any of its terms will be used as an admission or introduced as evidence as to any issue of law or fact in any action or proceeding, other than an action or proceeding to enforce this Agreement. This Agreement reflects, among other things, the compromise and settlement of disputed claims.

20. Knowing and Voluntary. In executing this Agreement, it is understood and agreed that the Parties rely wholly on their own judgment, belief, and knowledge of the nature extent, and duration of the alleged damages, and that the Parties have not been influenced to any extent in executing this Agreement by any representations or statements, regarding alleged damages or regarding any other matter, made by the Parties or by any person or persons representing the Parties.

21. Invalidity of any Provision. If any provision of this Agreement is held to be invalid, unenforceable or contrary to any public policy, law, statute and/or ordinance, the remainder of this Agreement will remain in effect and be valid and fully enforceable.

22. Copies. In any action or proceeding relating to this Agreement, a true and correct copy of this Agreement will be admissible to the same extent as the original Agreement.

23. Controlling Law: This Agreement is entered into in the State of California and will in all respects be interpreted, enforced and governed by the laws of the State of California and, where applicable, Federal law.

24. Drafting of this Agreement. Each of the Parties hereto represents that he or it fully participated in the drafting and terms of this Agreement. Accordingly, any ambiguities in the terms of this Agreement will not be construed against either of the Parties and any doctrine of law regarding interpretation of any such ambiguities in the terms and provisions of this Agreement against the Party drafting this Agreement will not be applicable.

25. Integration. This Court Enforceable Settlement Agreement and Release constitutes an integration of the entire understanding and agreement of the Parties, and supersedes all prior negotiations and understandings concerning the subject matter of this Agreement. Any

representations, warranties, promises, or conditions, whether written or oral, not specifically and expressly incorporated in this Agreement, will not be binding on the Parties, and the Parties each acknowledge that they have not relied, in entering into this Agreement, on any representation, warranty, promise or condition, not specifically and expressly set forth in this Agreement. This Agreement may not be amended, supplemented or abrogated other than by a written instrument executed by all of the Parties hereto.

26. Terms are Contractual. The terms of this Agreement are contractual and not a mere recital.

27. Counterparts. This Agreement may be executed in any number of counterparts and/or by facsimile, each of which will be deemed to be an original and all of which together will be deemed to be one and the same instrument.

28. Enforcement and Retained Jurisdiction. This Agreement will be in full force and effect until the Work contemplated in this Agreement is completed consistent with the terms of this Agreement. The Parties agree that the United States District Court for Northern California will reserve jurisdiction in this action to enforce the terms and provisions of this Agreement until the Work contemplated by this Agreement is completed in compliance with the terms agreed to herein by the Parties. The Parties agree that this Agreement is enforceable only by and as between the Parties to this Agreement and not by third party beneficiaries. The Parties agree that they will work cooperatively to resolve any issues and/or concerns that may arise regarding the Parties' respective obligations under this Agreement pursuant to the terms set forth herein before seeking the Court's involvement. The Parties agree that they shall promptly execute and stipulate to the filing of all documents required for the Court in this matter to issue an order retaining jurisdiction to enforce this Agreement and its terms.

29. Approvals. The Parties understand and agree that the Agreement is contingent upon, and will not be effective pending, the approvals of the Albany City Council and the Bay Cities Joint Powers Insurance Authority.

**END OF PAGE**
**SIGNATURES ON NEXT PAGE**

ACCEPTED AND AGREED:

Date: 12-19-2019

Andrew Galpern,
an individual Plaintiff

Date: 12/23/2019

Nicole Almaguer,
City Manager for the City of Albany, Defendant